**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IRWIN W. JACKSON and BLANCHE M. JACKSON,**

        **Plaintiffs,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-cv-650-Orl-22GJK**

**BRAY & GILLESPIE III MANAGEMENT LLC; OCEAN RESORTS; OCEAN WATERS, LLC; and BRAY & GILLESPIE, INC.,**

        **Defendants.**

_____

## ORDER

This cause comes before the Court on Defendants' Motion for Summary Judgment (Doc. No. 80) and Plaintiffs Irwin W. and Blanche M. Jackson's response to the motion (Doc. No. 106). Upon carefully considering the facts of the case, the parties' submissions, relevant depositions, and other exhibits, the Court holds that there are material facts in dispute that preclude summary judgment. Thus, Defendants' motion is DENIED.

**Analysis**

**I. Summary Judgment Standard**

On a motion for summary judgment, the movant bears the initial burden of showing that no genuine issue of material fact remains for trial. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). To avoid summary judgment, the opposing party must come forward with specific facts that are material and of a substantial nature. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations, evidence that is merely colorable

and not significantly probative, and personal opinions do not suffice. *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 949 (11th Cir. 1993); *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1365 (M.D. Fla. 2001). Though the opposing party must present specific evidence showing a question of material fact, the Court must make all reasonable factual inferences in favor of the opposing party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). In this case, there are numerous issues of material fact that require denying Defendants' Motion for Summary Judgment. Doc. No. 80.

**II. Whether the Cause of Plaintiff Irwin Jackson's Illness was *Legionella* is a Material Fact at Issue**

Though Defendants claim that "Plaintiffs' claims . . . are based on nothing more than mere speculation," (Doc. No. 80 p. 9), there exists a material fact as to whether Plaintiff Irwin Jackson contracted *Legionella* at the Sea Garden Inn. Defendants assert that "[Plaintiff] Irwin Jackson had a medical test that conclusively ruled out a diagnosis of Legionnaire's disease." *Id.*; *see also* Doc. No. 80-6 p. 2. However, Plaintiff Irwin Jackson was not tested for the presence of *Legionella* upon admission to the hospital on January 9, 2006, but was apparently instead tested on February 6, 2006. Doc. No. 80-6 p.2. Plaintiff's expert opined that "[t]he lack of detectable LP1 antigen[1] in Mr. Jackson's urine culture may be a result of the lack of sensitivity of the test, or may reflect the successful treatment of his [Legionnaire's disease] the previous month." Samkoff Report (Doc. No. 77-2) p. 5 (footnote added). A Florida Department of Health Report stated that it is uncommon to test for *Legionella*, and that

---

[1] Plaintiffs' expert, Dr. Samkoff, reported that the LP1 antigen is the serotype of Legionella pneumophila that causes most cases of Legionnaire's disease. Samkoff Report (Doc. No. 77-2) p. 2.

"sensitive, specific diagnostic tests are not widely used when atypical pneumonia cases present to health care providers." Doc. No. 80-2 p. 2. The parties' experts dispute the accuracy and effects of timing of the tests, making the issue of whether Plaintiff Irwin Jackson had *Legionella* a material fact in question.

The facts indicate that Plaintiff Irwin Jackson visited the hospital twice while staying at the Sea Garden Inn in January 2006. I. Jackson Dep. (Doc. No. 83) p. 59. The second visit was to the emergency room, where he was admitted for intravenous antibiotics and diagnosed with pneumonia. *See* Medical Records (Doc. No. 106-21) pp. 19-20; I. Jackson Dep. (Doc. No. 83) p. 79. He had chills, nausea, and a nonproductive cough. *Id.* at pp. 64, 79. At his deposition, Plaintiff Irwin Jackson stated that he did not have chills at the onset of the illness, but remembered having a fever and feeling fatigued. *Id.* at p. 60. Mr. Jackson remembered that the chills came on a few days after he fell ill. *Id.* at pp. 63-64. The record is unclear as to whether he vomited or had shortness of breath. *Id.* at pp. 79, 84. Still, based on the medical records and deposition testimony, Plaintiff's expert, Dr. Samkoff, opined that Plaintiff Irwin Jackson had Legionnaire's disease. Samkoff Report (Doc. No. 77-2) pp. 5-6.

Furthermore, Defendants cannot deny that eleven cases of pneumonia were reported in people who had stayed or worked at the hotel in late 2005 and early 2006. Doc. No. 80-2 p. 4. Three of those cases were confirmed to be Legionnaire's disease by urine antigen test. *Id.* The Florida Department of Health reported "nine cases of physician or x-ray-confirmed pneumonia, seen or admitted from January 8- January 22." *Id.* at p. 2. The only common connection between these individuals was the Sea Garden Inn. "None of the ill persons traveled together and the only initial common exposure was residing at the hotel anytime

during the month of January." *Id.* "[E]pidemiologic data indicated that the source of the outbreak was the hotel." *Id.* at p. 6. Based on this evidence, there is a material factual question as to whether Plaintiff Irwin Jackson contracted *Legionella* from the Sea Garden Inn.

Defendants' expert claims that the "Health Department did not do an adequate job of looking for alternative exposures. There's nothing in [the report] about restaurants, about other places they may have gone. There's nothing about the walk to the beach past cooling towers from other hotels, et cetera." Millar Dep. (Doc. No. 80-5) p. 9 (Dep. p. 126). At best, this opinion points out the existence of questions of fact. While the state's investigation may have been imperfect (*see* Jarvis Dep. (Doc. No. 80-14) pp. 13, 17-18 (Dep. pp. 95, 132-33)), the investigation coupled with the other incidences of illness and Plaintiff Irwin Jackson's symptoms are sufficient to raise material fact questions that preclude summary judgment.

### III. Whether there was *Legionella* at the Sea Garden Inn is a Material Fact at Issue

Defendant makes the blanket assertion that there was no *Legionella* at the hotel and no dangerous conditions present there. Doc. No. 80 pp. 2, 6, 8. Curiously, according to Defendants, *Legionella* is present everywhere in the natural environment yet was definitively proven to not be at the hotel. *Id.* at p. 10; *see also* Millar Dep. (Doc. No. 80-5) p. 7 (Dep. p. 108). Defendants assert that "Plaintiffs cannot prove their negligence claims because *Legionella* was not found at the [hotel] despite extensive testing[,]" including four separate rounds of testing at the hotel. Doc. No. 80 pp. 9-11. It is true that the hotel was tested and no *Legionella* was found. However, the reliability of the tests is disputed. *See, e.g.,* Samkoff Report (Doc. No. 77-2) pp. 5-6. Furthermore, there is sufficient evidence of illness and

-4-

suitable conditions for the growth of *Legionella* to preclude summary judgment for Defendants. In the State Waterborne Disease Outbreak Report, Andre Ourso reported in early 2006 that two spa facilities at the Sea Garden "had inadequate chlorine and bromine levels and unchanged filters." Doc. No. 106-3 p. 2. Additionally, Plaintiffs' expert, Matthew Freije, has opined that spa maintenance at the hotel was substandard. Doc. No. 79-2 p. 9. On this evidence, there is a question of material fact as to whether *Legionella* was present at the Sea Garden Inn.

**IV. Whether Defendants Exercised Reasonable Care in Maintaining the Hotel Premises is a Question of Material Fact at Issue**

Defendants claim that they did not breach any duty of care to Plaintiffs (Doc. No. 80 p. 12), but Plaintiffs have presented sufficient evidence to create a question of material fact as to whether Defendants met the required standard of care. The hotel had a duty to maintain its premises in a reasonably safe condition for invitees. Fla. Stat. § 768.0710(1) (2008). Plaintiffs have presented evidence that an inspection of the hotel found "water damage and black-like substance on [the] first floor, including the breakfast room . . . ." Doc. No. 80-2 p. 4 (internal quotation marks omitted). In the Volusia County Health Report, the Health Department reportedly closed both the indoor and outdoor spas at the hotel, because of insufficient sanitizing, low chemical levels, and slow flow. *Id.* at pp. 4-5. The pool was often closed because of technical issues during the relevant time period. Frey Dep. (Doc. No. 106-27) p. 2 (Dep. p. 40). Plaintiffs have presented evidence that Defendants were "struggling with" the pool and spa and that there was a potential lapse in pool maintenance. Jacobsen Dep. (Doc. No. 80-10) pp. 7-8 (Dep. pp. 87-88). Based on this evidence and the incidence of

illness, the Court holds that there is also a question of material fact as to the care exercised by Defendants that precludes summary judgment.

## Conclusion

Based on the foregoing, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 80), filed February 29, 2008, is DENIED.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 1, 2008.

ANNE C. CONWAY
United States District Judge

Copies furnished to:
Counsel of Record
Magistrate Judge